# In the United States Court of Federal Claims

No. 19-873T
(Filed: July 19, 2019)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| SHARON M. WALBY, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| THE UNITED STATES, | * |
| | * |
| Defendant. | * |

Pro Se Plaintiff; Sua Sponte Dismissal;
Sovereign Citizen; Tax Protestor;
Residency; Substantial Presence Test

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Sharon M. Walby, Forestville, MI, pro se.

## OPINION AND ORDER

In this case, pro se plaintiff Sharon M. Walby asserts that she is not required to pay income taxes because she is a nonresident alien under the Internal Revenue Code. Ms. Walby insists that she is a citizen of Michigan, and not the United States, because she purportedly renounced her United States citizenship in connection with a United States passport renewal application in 2015. She seeks a refund of all federal income taxes withheld from her paychecks for the 2014, 2016, 2017, and 2018 tax years, plus interest, costs, and punitive damages.

As explained below, Ms. Walby failed to timely file her administrative refund claim for the 2014 tax year. Further, her allegations with respect to each of the tax years at issue are frivolous and lack merit. Accordingly, without awaiting a response from defendant, the court dismisses Ms. Walby's complaint.

## I. BACKGROUND

### A. The Sovereign Citizen Movement

Ms. Walby's complaint reflects that she adheres to the belief that even though she was born and resides in the United States, she is not a "Fourteenth Amendment" United States citizen but rather a citizen of the "sovereign state" of Michigan. This belief is a hallmark of the sovereign citizen movement. So-called "sovereign citizens" believe that they are not subject to federal government authority and employ various tactics in an attempt to, among other acts, avoid paying taxes, extinguish debts, and derail criminal proceedings. See, e.g., Brown v. United States, 105 F.3d 621, 622-23 (Fed. Cir. 1997) (describing an attempt to avoid payment of federal

income taxes); United States v. Schneider, 910 F.2d 1569, 1570 (7th Cir. 1990) (describing an attempt to present a defense in a criminal trial); Bryant v. Wash. Mut. Bank, 524 F. Supp. 2d 753, 755-56 (W.D. Va. 2007) (describing an attempt to satisfy a mortgage).

The goal of some sovereign citizens is the recovery of money from the United States that they actually—in the form of taxes—or purportedly paid to the government. See, e.g., Ambort v. United States, 392 F.3d 1138, 1139 (10th Cir. 2004) (describing attempts to obtain a refund of federal income taxes); Rivera v. United States, 105 Fed. Cl. 644, 646-47 (2012) (describing the plaintiff's allegations that the issuance of his birth certificate and social security number created trust accounts containing money that the federal government owed to him). As the Honorable Norman K. Moon explained, such claims—which he described as "equal parts revisionist legal history and conspiracy theory"—are premised upon the belief that

> prior to the passage of the Fourteenth Amendment, there were no U.S. citizens; instead, people were citizens only of their individual states. Even after the passage of the Fourteenth Amendment, U.S. citizenship remains optional. The federal government, however, has tricked the populace into becoming U.S. citizens by entering into "contracts" embodied in such documents as birth certificates and social security cards.

Bryant, 524 F. Supp. 2d at 758; see also id. at 758-59 (describing further tenets of the "sovereign citizen" movement); accord United States v. Glover, 715 F. App'x 253, 255 n.2 (4th Cir. 2017) (unpublished per curiam decision) ("Adherents to sovereign citizen theory believe in a vast governmental conspiracy governed by complex, arcane rules, according to which sovereign citizens are exempt from many laws, including the obligation to pay taxes . . . ." (internal quotation marks omitted)). The theory that "individuals ('free born, white, preamble, sovereign, natural, individual common law "de jure" citizens of a state, etc.') are not 'persons' subject to taxation under the Internal Revenue Code" has long been rejected as "completely lacking in legal merit and patently frivolous." Lonsdale v. United States, 919 F.2d 1440, 1448 (10th Cir. 1990).

### B. Ms. Walby's Factual Allegations

Ms. Walby was born in Wyandotte, Michigan, in 1958. Compl. ¶ 51; Compl. Ex. 3 at 7-8; see also Compl. Ex. 2 at 6 ("My affidavits clearly indicate I was born in Michigan."). Both of her parents were also born in Michigan. Compl. Ex. 3 at 5. As relevant here, she has lived in Michigan continuously since at least 2014. See Compl. Ex. 1 at 5; Compl. Ex. 2 at 7-8. Indeed, Ms. Walby describes herself as a "Citizen-Inhabitant of Michigan," Compl. ¶ 18, avers that she has "never abrogated her Michigan Citizenship," id. ¶ 27 (emphasis added), and does not allege that she has even travelled (much less lived) abroad at any point in 2014 or thereafter.

Ms. Walby has worked for Baker College in Michigan since at least 2006.[1] See Compl. Ex. 3 at 7. In 2014, Baker College withheld $9,751.60 in federal income taxes out of $63,070.00 in taxable wages from Ms. Walby's paychecks. Compl. ¶ 4; Compl. Ex. 1 at 5. Beginning in 2015, she claimed exemption from such withholdings via Internal Revenue Service ("IRS") Form W-4, Employee's Withholding Allowance Certificate, and IRS Form 8233, Exemption From Withholding on Compensation for Independent (and Certain Dependent) Personal Services of a Nonresident Alien Individual. Compl. ¶ 32. Accordingly, Baker College did not withhold any federal income taxes from Ms. Walby's paychecks in 2015. Id. In November 2016, the IRS directed Baker College to begin withholding federal income taxes from her paychecks with zero allowances; Baker College has continued to do so through the filing of the complaint. Id. ¶¶ 32, 37. To that end, Baker College has withheld the following amounts of federal income taxes from Ms. Walby's paychecks each year:

| Year | Taxable Income | Federal Income Tax Withheld |
|---|---|---|
| 2016 | $72,690.00 | $1,882.36 |
| 2017 | $72,756.72 | $13,032.52 |
| 2018 | $65,450.00[2] | $10,924.43 |

Id. ¶ 4; Compl. Ex. 2 at 7-8.

On January 14, 2015, at approximately the same time she began claiming exemption from withholding, Ms. Walby executed an "Affidavit of Citizenship" before a notary public in Michigan, Compl. Ex. 3 at 8-9, and promptly submitted the affidavit to the United States Department of State ("State Department"). Compl. ¶ 19; Compl. Ex. 2 at 4-5. In that affidavit, Ms. Walby declared that she was a sovereign citizen of Michigan, and because she was "not restricted by the 14th Amendment" to the United States Constitution, she was not a United States citizen thereunder but rather a nonresident alien not subject to income taxes. Compl. Ex. 3 at 8-9. According to Ms. Walby, she "became a non-resident alien (a.k.a. U.S. National)" by the act of submitting the affidavit. Compl. Ex. 1 at 2; Compl. Ex. 2 at 4. She also attached the "Affidavit of Citizenship" to her passport renewal application filed in early 2016, Compl. ¶ 19; Compl. Ex. 3 at 6, and received a renewed United States passport on February 16, 2016, Compl. ¶ 30.

Taking the position that, as a sovereign citizen, she was exempt from federal income taxes, Ms. Walby did not file any federal income tax returns for the 2014 through 2018 tax years. Id. ¶¶ 4, 35. On December 22, 2017, Ms. Walby filed Form 843, Claim for Refund and Request for Abatement, with the IRS in an attempt to receive a refund of the federal income taxes

---

[1] Ms. Walby does not allege that she has worked for any other employers during the relevant time periods.

[2] The $65,450.00 figure reflects amounts paid through November 30, 2018, and not the full year. Compl. Ex. 3 at 8.

withheld from her paychecks in 2014.  Id.; see also Compl. Ex. 1 (refund claim for 2014).  On December 8, 2018, Ms. Walby filed another Form 843, Claim for Refund and Request for Abatement, with the IRS, this time seeking a refund of the federal income taxes withheld from her paychecks in 2016, 2017, and 2018.  Compl. ¶ 4; Compl. Ex. 2 (refund claim for 2016, 2017, and 2018).  In each of her refund claims, Ms. Walby argued that she is "a Citizen of one of the several States, known as Michigan, and not a 14th Amendment citizen, subject to income tax."  E.g., Compl. Ex. 2 at 1.

Despite her request for a hearing, id. at 4, Ms. Walby alleges that she received no response to her refund claims, Compl. ¶ 4.  She then filed the instant lawsuit on June 13, 2019.

## II. LEGAL STANDARDS

### A. Pro Se Plaintiffs

Generally, the court "must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff."  Trusted Integration, Inc. v. United States, 659 F.3d 1159, 1163 (Fed. Cir. 2011).  Moreover, pro se pleadings are "held to less stringent standards than formal pleadings drafted by lawyers" and are "to be liberally construed."  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  However, the "leniency afforded to a pro se litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements."  Minehan v. United States, 75 Fed. Cl. 249, 253 (2007); accord Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995) ("The fact that [the plaintiff] acted pro se in the drafting of [her] complaint may explain its ambiguities, but it does not excuse its failures, if such there be.").  In other words, a pro se plaintiff is not excused from her burden of proving, by a preponderance of evidence, that the court possesses jurisdiction.  See McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 179 (1936); Banks v. United States, 741 F.3d 1268, 1277 (Fed. Cir. 2014) (citing Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988)).

### B. Subject-Matter Jurisdiction

Whether the court possesses jurisdiction to decide the merits of a case is a "threshold matter."  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998).  Subject-matter jurisdiction cannot be waived or forfeited because it "involves a court's power to hear a case."  Arbaugh v. Y & H Corp., 546 U.S. 500, 514 (2006) (quoting United States v. Cotton, 535 U.S. 625, 630 (2002)).  "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  Ex parte McCardle, 74 U.S. (7 Wall) 506, 514 (1868).  Therefore, it is "an inflexible matter that must be considered before proceeding to evaluate the merits of a case."  Matthews v. United States, 72 Fed. Cl. 274, 278 (2006); accord K-Con Bldg. Sys., Inc. v. United States, 778 F.3d 1000, 1004-05 (Fed. Cir. 2015).

Either party, or the court <u>sua sponte</u>, may challenge the court's subject-matter jurisdiction at any time. <u>Arbaugh</u>, 546 U.S. at 506; <u>see also Jeun v. United States</u>, 128 Fed. Cl. 203, 209-10 (2016) (collecting cases). The court must examine all pertinent issues relevant to subject-matter jurisdiction because "[c]ourts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." <u>Hertz Corp. v. Friend</u>, 559 U.S. 77, 94 (2010); <u>accord Gonzalez v. Thaler</u>, 565 U.S. 134, 141 (2012) ("When a requirement goes to subject-matter jurisdiction, courts are obligated to consider <u>sua sponte</u> issues that the parties have disclaimed or have not presented."). If the court finds that it lacks subject-matter jurisdiction over a claim, Rule 12(h)(3) of the Rules of the United States Court of Federal Claims ("RCFC") requires the court to dismiss that claim.

## C. The Tucker Act

The ability of the United States Court of Federal Claims ("Court of Federal Claims") to entertain suits against the United States is limited. "The United States, as sovereign, is immune from suit save as it consents to be sued." <u>United States v. Sherwood</u>, 312 U.S. 584, 586 (1941). The waiver of immunity "may not be inferred, but must be unequivocally expressed." <u>United States v. White Mountain Apache Tribe</u>, 537 U.S. 465, 472 (2003). The Tucker Act, the principal statute governing the jurisdiction of this court, waives sovereign immunity for claims against the United States, not sounding in tort, that are founded upon the United States Constitution, a federal statute or regulation, or an express or implied contract with the United States. 28 U.S.C. § 1491(a)(1) (2012); <u>White Mountain</u>, 537 U.S. at 472. However, the Tucker Act is merely a jurisdictional statute and "does not create any substantive right enforceable against the United States for money damages." <u>United States v. Testan</u>, 424 U.S. 392, 298 (1976). Instead, the substantive right must appear in another source of law, such as a "money-mandating constitutional provision, statute or regulation that has been violated, or an express or implied contract with the United States." <u>Loveladies Harbor, Inc. v. United States</u>, 27 F.3d 1545, 1554 (Fed. Cir. 1994) (en banc).

## D. Tax Refund Suits

Congress has granted the Court of Federal Claims the authority to entertain tax refund suits. 28 U.S.C. § 1346(a)(1); <u>United States v. Clintwood Elkhorn Mining Co.</u>, 553 U.S. 1, 4 (2008). To bring a tax refund suit, a plaintiff must:

- make full payment of her tax liabilities, <u>Flora v. United States</u>, 362 U.S. 145, 177 (1960); <u>Diversified Grp. Inc. v. United States</u>, 841 F.3d 975, 981 (Fed. Cir. 2016);

- file a timely claim for refund with the IRS, I.R.C. § 7422(a) (2012); and

- file a timely complaint after the refund claim is denied or deemed denied, <u>id.</u> § 6532(a).

Further, plaintiffs filing a tax refund suit in the Court of Federal Claims must include the following with the complaint:

> (1) a copy of the claim for refund, and
>
> (2) a statement identifying:
>
>> (A) the tax year(s) for which a refund is sought;
>>
>> (B) the amount, date, and place of each payment to be refunded;
>>
>> (C) the date and place the return was filed, if any;
>>
>> (D) the name, address, and identification number (under seal) of the taxpayer(s) appearing on the return;
>>
>> (E) the date and place the claim for refund was filed; and
>>
>> (F) the identification number (under seal) of each plaintiff, if different from the identification number of the taxpayer.

RCFC 9(m).

## E. Failure to State a Claim

In addition to considering subject-matter jurisdiction sua sponte, the court may dismiss a complaint sua sponte for failure to state a claim upon which relief could be granted if "the pleadings sufficiently evince a basis for that action." Anaheim Gardens v. United States, 444 F.3d 1309, 1315 (Fed. Cir. 2006); accord Constant v. United States, 929 F.2d 654, 657 (Fed. Cir. 1991) (holding that a sua sponte dismissal for failure to state a claim did not violate due process when the "claim was untenable as a matter of law, and no additional proceedings could have enabled [the plaintiff] to prove any set of facts entitling him to prevail on his claim for relief"); Sun v. United States, 130 Fed. Cl. 569, 569 ("[P]ursuant to its inherent authority, the Court sua sponte dismisses [the plaintiff's] complaint for failure to state a claim."), aff'd, 668 F. App'x 888 (Fed. Cir. 2016) (unpublished decision). In such circumstances, "any expenditure of governmental resources in preparing a defense to [the] complaint would be a waste of public funds." Sun, 130 Fed. Cl. at 569.

### III. ANALYSIS

In her complaint, Ms. Walby alleges that she is not subject to federal income tax for the 2014 and 2016 through 2018 tax years because she is a citizen of Michigan and not the United States, and therefore she is entitled to a refund of the federal income taxes withheld from her paychecks. Ms. Walby is incorrect. Despite her protests to the contrary, she is a United States citizen under federal law. To the extent that she is not a United States citizen, she is nevertheless a United States resident for tax purposes.

#### A. The Court Lacks Jurisdiction to Consider Ms. Walby's 2014 Refund Claim

As an initial matter, the court must determine whether it has subject-matter jurisdiction over the allegations contained in Ms. Walby's complaint. As noted above, a plaintiff must meet three requirements to invoke subject-matter jurisdiction in this court with respect to a tax refund claim: full payment, a timely administrative claim, and a timely complaint.

#### 1. Full Payment

Ms. Walby meets the full-payment requirement with respect to each of the tax years identified in her complaint (i.e., 2014 and 2016 through 2018) because the disputed taxes were withheld from her paychecks, as shown on the W-2s and pay stubs that she attached as exhibits to her complaint.

#### 2. Timely Administrative Claim

By requiring that a plaintiff file a timely refund claim with the IRS, I.R.C. § 7422(a) creates a jurisdictional prerequisite to filing a refund suit in this court. Chi. Milwaukee Corp. v. United States, 40 F.3d 373, 374 (Fed. Cir. 1994); see also Clintwood Elkhorn, 553 U.S. at 7 (noting that Congress must have intended I.R.C. § 7422(a) to have an expansive reach given its inclusion of five "any's" in one sentence). In addition, the timely administrative claim requirement "is designed both to prevent surprise and to give adequate notice to the [IRS] of the nature of the claim and the specific facts upon which it is predicated, thereby permitting an administrative investigation and determination." Computervision Corp. v. United States, 445 F.3d 1355, 1363 (Fed. Cir. 2006) (internal quotation marks omitted).

For individuals, a refund claim must generally be made "on the appropriate income tax return" or amended return. Treas. Reg. § 301.6402-3(a) (2017). As noted above, Ms. Walby did not file any tax returns for the years at issue. Nevertheless, the court assumes (without deciding) that the Forms 843 which Ms. Walby filed with the IRS constitute valid refund claims. See id. § 301.6402-2(b)(1) (describing the requirements of a valid refund claim).

To be timely, a plaintiff must file her administrative refund claim "within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires later." I.R.C. § 6511(a). When "no return was filed by the taxpayer," a refund claim is timely if it is filed "within 2 years from the time the tax was paid." Id. Further, "[n]o credit or

refund shall be allowed or made after the expiration of the period of limitation prescribed in [I.R.C. § 6511(a)] for the filing of a claim for credit or refund, unless a claim for credit or refund is filed by the taxpayer within such period." Id. § 6511(b)(1). Because Ms. Walby acknowledges that she filed no tax returns for the years at issue, the court must compare the dates on which the tax was paid for each year with the dates on which she filed her refund claims with the IRS.

Payments made via withholding credits are deemed paid on April 15 of the following year for calendar-year taxpayers. Id. § 6513(b)(1). Thus, Ms. Walby's withheld federal income taxes for 2014 are deemed to have been paid on April 15, 2015. Because she did not file her purported administrative refund claim for the 2014 withheld taxes until December 22, 2017—i.e., more than two years later—that refund claim was untimely. However, Ms. Walby's purported refund claims for the 2016 through 2018 tax years were timely. Her withheld federal income taxes for those years were deemed paid on April 15, 2017 (for 2016); April 15, 2018 (for 2017); and April 15, 2019 (for 2018). She filed her purported refund claims for those years on December 8, 2018—i.e., less than two years later.

### 3. Timely Complaint

Ms. Walby also meets the timely-complaint requirement for each of the tax years at issue. A plaintiff's complaint is timely if filed within two years of the date on which the IRS denies an administrative refund claim. Id. § 6532(a)(1). When the IRS does not act on a refund claim, a plaintiff must wait at least six months after filing the refund claim before filing suit. Id. In other words, a refund claim is deemed denied if the IRS fails to respond within six months, at which point a plaintiff may initiate a lawsuit. Ms. Walby filed her purported refund claims on December 22, 2017 (for 2014), and December 8, 2018 (for 2016 through 2018). The IRS failed to act on her claims, and she filed her complaint in this court on June 13, 2019—i.e., more than six months later.

### 4. Summary

The Court of Federal Claims lacks subject-matter jurisdiction to consider Ms. Walby's refund claim for 2014 because Ms. Walby failed to file a timely administrative refund claim for that year. However, the court has jurisdiction to consider her refund claims for 2016 through 2018. Further, Ms. Walby has satisfied the pleading requirements of RCFC 9(m). Therefore, the court shall now turn to the crux of her claims: whether Ms. Walby is exempt from tax as a Michigan citizen and United States noncitizen.[3]

---

[3] Although the court lacks subject-matter jurisdiction to consider Ms. Walby's refund claim for the 2014 tax year, it nevertheless considers whether she has stated a plausible claim for relief as an alternative ground for dismissal and because she advances the same reasoning to support her claim for 2014 as she does for 2016 through 2018.

## B. Ms. Walby Is a United States Citizen

It is well understood that, with few exceptions, individuals born in the United States are indeed United States citizens. The Fourteenth Amendment—which was ratified on July 28, 1868—provides, in relevant part, that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States <u>and</u> of the State wherein they reside." (emphasis added). Similarly, Congress has declared that "a person born in the United States, and subject to the jurisdiction thereof" is a United States citizen at birth. 8 U.S.C. § 1401(a) (2012). This provision has been in force since 1952.[4] <u>See</u> Immigration and Nationality Act, ch. 477, § 301(a)(1), 66 Stat. 163, 235 (1952).

The exception to birthright citizenship—i.e., individuals not subject to the jurisdiction of the United States—is a narrow one. It applies only to children born to foreign diplomats, which typically enjoy immunity under federal law and are thus not subject to its jurisdiction, and certain other diplomatic officers. <u>See</u> 8 C.F.R. §§ 101.3(a)-(b), 1101.3(a)-(b) (2014). Ms. Walby does not allege that her parents were foreign diplomatic officers at the time of her birth. Indeed, both of her parents were, like her, born in Michigan, and thus have always been United States citizens.

A United States citizen can, however, lose her citizenship "by voluntarily performing [certain] acts with the intention of relinquishing United States nationality." 8 U.S.C. § 1481(a). As relevant here, one such act is by making a formal renunciation. <u>See id.</u> § 1481(a)(5)-(6). A person renouncing her citizenship while in the United States must do so formally, in writing, "in such form as may be prescribed by, and before such officer as may be designated by, the Attorney General, whenever the United States shall be in a state of war and the Attorney General shall approve such renunciation as not contrary to the interests of national defense." <u>Id.</u> § 1481(a)(6).

Ms. Walby apparently attempted to renounce her citizenship by submitting her "Affidavit of Citizenship," which she executed in Michigan, to the State Department. However, she does not allege that she fulfilled the remaining requirements of 8 U.S.C. § 1481(a)(6). Therefore, because the burden of proof to establish a "loss of United States nationality [is] upon the person or party claiming that such loss occurred," <u>id.</u> § 1481(b), her attempted renunciation is ineffective. Further, Ms. Walby cannot avail herself of the less stringent requirements of 8 U.S.C. § 1481(a)(5) because that subsection only applies to renunciations made while abroad. <u>See id.</u> § 1483(a) (providing that loss of nationality while in the United States can only take place as provided in 8 U.S.C. § 1481(a)(6)-(7)). Finally, Ms. Walby does not allege that she took any other acts listed in 8 U.S.C. § 1481(a) that would result in loss of citizenship, that the State Department has issued her a certificate of loss of nationality, or that a court of competent jurisdiction has declared her to be a noncitizen. <u>See</u> I.R.C. §§ 877A(g)(4) (listing when a

---

[4] It is well understood that there are "two sources of citizenship, and two only—birth and naturalization." <u>United States v. Wong Kim Ark</u>, 169 U.S. 649, 702 (1898). The law in effect at the time of an individual's birth is determinative of whether that individual acquires so-called birthright citizenship. <u>See, e.g.</u>, <u>Thomas v. Lynch</u>, 796 F.3d 535, 538 (5th Cir. 2015).

"citizen shall be treated as relinquishing [her] United States citizenship"), 7701(a)(50)(A) ("An individual shall not cease to be treated as a United States citizen before the date on which the individual's citizenship is treated as relinquished under section 877A(g)(4).").

Accordingly, Ms. Walby has failed to demonstrate that she is not a United States citizen. Indeed, her arguments to the contrary are patently frivolous.

### C. Ms. Walby Is a United States Resident for Tax Purposes

Even assuming, for the sake of argument only, that Ms. Walby is not a United States citizen, she is still a resident for tax purposes and thus her argument that she is a "nonresident alien" not subject to tax fails.

For tax purposes, an individual is classified as either a (1) "United States person"—i.e., a "citizen or resident of the United States"—or (2) "nonresident alien." Id. § 7701(a)(30)(A), (b)(1); accord Treas. Reg. § 1.871-1(a) ("For purposes of the income tax, alien individuals are divided generally into two classes, namely, resident aliens and nonresident aliens. Resident alien individuals are, in general, taxable the same as citizens of the United States . . . ."). A noncitizen is treated as a resident with respect to a particular calendar year in three circumstances: (1) obtaining lawful permanent residence at any time during the year, (2) meeting the "substantial presence" test, or (3) making a first-year election. I.R.C. § 7701(b)(1)(A). A person is treated as a "nonresident alien" only if she is neither a citizen nor treated as a resident. Id. § 7701(b)(1)(B).

Michigan is located within the United States. Id. § 7701(a)(9). Ms. Walby therefore meets the "substantial presence" test because she was present in the United States for the entirety of the 2014 through 2018 tax years; she does not allege that any of that time is exempt for purposes of the test. See id. § 7701(b)(3), (5) (describing the requirements of the "substantial presence" test and its exemptions). Further, because a person who meets the "substantial presence" test for a particular year is deemed a resident as of the first day during that year on which she is present in the United States, id. § 7701(b)(2)(A)(iii), and because Ms. Walby was present for the entirety of each of the years at issue, Ms. Walby was a United States resident for the entire 2014 through 2018 tax years.

### D. Ms. Walby Is Subject to Federal Income Tax

Having established that Ms. Walby is a United States person (either by citizenship or residency pursuant to the "substantial presence" test), the court considers whether she was subject to federal income tax for the 2014 or 2016 through 2018 tax years.

The Internal Revenue Code provides that a United States citizen or resident with gross income above a certain amount in a taxable year is generally subject to tax and must file a tax return for that year. Id. § 6012(a)(1). See generally Treas. Reg. § 1.6012-1. A citizen or

resident must file her tax return using Form 1040,[5] whereas a "nonresident alien" required to file a tax return must do so using Form 1040NR. Id. § 1.6012-1(a)(6), (b)(1)(i).

Ms. Walby's gross income for 2014 was $63,070. It was substantially higher in each of the 2016 through 2018 years. Assuming that Ms. Walby was eligible to elect the "married filing jointly" filing status for each of those years, and further assuming that her spouse had no income, her gross income was above the amount at which she was liable for federal income taxes and thus required to file a tax return (i.e., the filing threshold). The filing threshold for joint filers—the status with the highest filing threshold—is the "sum of twice the exemption amount plus the basic standard deduction applicable to a joint return." I.R.C. § 6012(a)(1)(iv). Accordingly, the filing threshold for each year at issue was as follows:

| Year | Personal Exemption | Standard Deduction | Filing Threshold |
|------|--------------------|--------------------|------------------|
| 2014 | $3,950 | $12,400 | $20,300 |
| 2016 | $4,050 | $12,600 | $20,700 |
| 2017 | $4,050 | $12,700 | $20,800 |
| 2018 | $0 | $24,000 | $24,000 |

See id. §§ 63(c) (defining the "standard deduction"), 151(d) (defining the "exemption amount"). Because Ms. Walby's gross income exceeded the filing threshold for each of the tax years at issue, she was subject to tax and required to file Form 1040 for each of those years.[6]

---

[5] Some individuals qualify to file tax returns using Form 1040A, which is "an optional short form" version of Form 1040. Treas. Reg. § 1.6012-1(a)(6). But see I.R.S. News Release IR-2019-07 (Jan. 28, 2019) (describing a "redesigned" Form 1040 that "consolidates Forms 1040, 1040A, and 1040EZ into one form that all individual taxpayers will use to file their 2018 federal income tax return").

[6] Even if Ms. Walby had been a "nonresident alien" for the years at issue, she was still subject to United States federal income tax on her wages earned from Michigan sources while residing in Michigan. Nonresident aliens are subject to tax at regular tax rates on income "which is effectively connected with the conduct of a trade or business within the United States." I.R.C. § 871(b)(1). The Internal Revenue Code defines "[c]ompensation for labor or personal services performed in the United States" for a domestic employer as being income from a United States source. Id. § 861(a)(3). Receiving such compensation (i.e., in the form of wages or salaries) constitutes engaging in the "trade or business" of being an employee in the United States, Treas. Reg. § 1.864-4(c)(6)(ii), which amounts to receiving income that is "effectively connected with the conduct of [such] trade or business," I.R.C. § 864(c)(3). Unlike United States citizens and residents, however, nonresident aliens are generally allowed only business deductions and the personal exemption, and not the standard deduction. Id. § 873. They must file a "true and accurate" tax return to avail themselves of these deductions. Id. § 874(a).

The court also observes that the IRS was within its authority to require Ms. Walby's employer to withhold federal income taxes at the "single" rate with zero allowances, see Treas. Reg. § 31.3402(f)(2)-1(g)(2), which was a reasonable collection effort for the IRS to pursue in November 2016 given that Ms. Walby had, at that point, neither filed tax returns nor paid income taxes (through withholding or otherwise) for multiple years.  To the extent that Ms. Walby believes her employer withheld excessive amounts for a particular tax year, she must file a tax return on Form 1040 to seek a refund.

## IV.  CONCLUSION

Ms. Walby's refund claim for 2014 was untimely.  Further, her refund claims for 2014 and 2016 through 2018 are meritless.  Ms. Walby is a United States citizen; she was born in Michigan and has resided and worked there continuously.  Her arguments that she is a Michigan citizen, but not a citizen of the United States, are frivolous.  In any event, to the extent that she is a noncitizen, Ms. Walby is a United States resident for tax purposes.  She is subject to tax and required to file a tax return on Form 1040.  Finally, the IRS was within its rights to direct Ms. Walby's employer to withhold federal income taxes from her paychecks.  To the extent that any such withholding was excessive, Ms. Walby must file a tax return to obtain a refund.

Accordingly, the court dismisses Ms. Walby's complaint, sua sponte, for lack of subject-matter jurisdiction (with respect to 2014) and for failure to state a claim upon which relief can be granted (with respect to 2016 through 2018).  To the extent that the court has jurisdiction over Ms. Walby's 2014 refund claim, the court dismisses it for failure to state a claim upon which relief can be granted.  No costs.  The clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

MARGARET M. SWEENEY
Chief Judge